PETITT *v.* MORTON ET AL.

(Decided June 2, 1930.)

*Messrs. Squire, Sanders & Dempsey* and *Mr. H. L. Deibel,* for plaintiff in error.

*Messrs. Day & Day* and *Mr. J. A. Curtis,* for defendants in error.

SHERICK, J. The question raised in this case is that the trial court erred in sustaining a demurrer to the plaintiff's petition, upon which order final judgment was entered.

The action is grounded in tort, and the facts alleged in the petition are uncommon and unique. They are, in substance, as follows:

On June 4, 1905, one Milton Morton, a widower, died, leaving the three defendants, William C. Morton, Kathleen Morton and Maud Morton, his only heirs at law. The plaintiff is a grandnephew. One year previous to the testator's death he executed a valid will, and therein was devised to the plaintiff a property known as the Savoy Hotel in the city of Cleveland.

At the time of execution of this will, and at death, Milton Morton owned the fee to this property; and it is alleged that he left this will physically intact and unrevoked, and intended its ultimate probate. At time of death, the market value of this property was $150,000. The balance of his estate, of a worth of about $650,000, was bequeathed to the three defendants.

It is next pleaded that the defendant William C. Morton at all times knew of the existence of this, his father's will, and that at his father's death, and at

all times since, he fraudulently concealed and suppressed this will; that on the date of the father's death the defendant William C. Morton wrote a purported last will of the decedent, and unlawfully lifted his father's hand after he was unconscious or dead and caused this spurious writing to be signed with the testator's mark, and that the other defendants, daughters of the decedent, signed this writing as witnesses, knowing, or they should have known, that this writing was spurious and not their father's last will; that thereafter, on August 16, 1905, William C. Morton, knowing that this second will was fraudulent, spurious, and a forgery, filed it along with his sworn application for probate as the last will of his father, and that two days thereafter the two sisters testified under oath in the probate court that the second writing was their father's last will, knowing at the time that it was spurious, and that by reason of the defendant's unlawful acts the second will was admitted to probate on August 18, 1905. The plaintiff is not named in the second will, but the defendant William C. Morton is named as the sole devisee of the hotel property.

It is next charged that, except for the fraudulent and unlawful suppression of the first, the genuine, will, and the fabrication and forgery of the second spurious paper, and the fraudulent probate thereof, the true will would have been probated and the plaintiff would have succeeded to the premises, but that the fraudulent and unlawful acts of the defendants have intercepted his title to the property and deprived him of the use and enjoyment thereof, which William C. Morton now enjoys. The present market value thereof is stated to be $1,250,000.

The plaintiff avers that he did not discover that the spurious second writing was a forgery until May or June, 1925, nor did he ascertain until that time that its admission to probate was procured by fraud and perjury, and that he did not discover that the testator left the first or true will until after he learned of the fraud practiced. It is charged that the true will was preserved by William C. Morton until 1923, and was then by him destroyed.

It is further alleged that the true will could now be probated, but for the fact that the spurious writing, later in date, admitted to probate and record, in express terms revoked and annulled the true will; that plaintiff did not and could not contest the spurious writing within the statutory period of one year, because within that period he had no knowledge of the fraud as alleged, and the fabricated will now stands unimpeached of record and the true will is revoked by it; that the true will cannot now be admitted to probate; and that, by reason of the unlawful and fraudulent suppression of the true will, and the felonious substitution of the spurious writing, the plaintiff has been damaged in the sum of $1,250,000 for which he prays judgment, and for punitive damages and attorney fees.

The demurrer as filed sets up two grounds: First, that the petition does not state a cause of action; and, second, that the alleged cause of action is barred by the statute of limitations.

There can be no doubt that the plaintiff cannot now contest the probated will because contest is barred by the one-year statute of limitations, and it is equally true that the first will cannot now be

probated, for the reason that there is no statute providing for the probate of a former will where the later will revokes the earlier one and the later has been admitted to probate, and its probate stands unimpeached.

In the case of *Seeds* v. *Seeds,* 116 Ohio St., 144, 157, 156 N. E., 193, 52 A. L. R., 761, it is intimated that proceedings in the probate court pertaining to wills, where judgments have been procured by fraud, are entitled to no greater sanctity or finality than other proceedings in other courts. The question, however, was not squarely before the court, and we do not find the *Seeds case* an authority, in view of other pronouncements of the Supreme Court that a probate court has no inherent power to vacate an order made in the probating of a will, but rather that its jurisdiction is derived solely from constitutional and statutory provision. And, there being no such provision, the probate court has no power in this state in this instance to vacate its order of probate even if it had been conclusively proven that the second will was a forged instrument, and we are led to the belief that the plaintiff could obtain no relief whatever in the probate court, for he is without a remedy in that court.

Our attention has been called by oral argument and brief to the fact that the Court of Appeals of the Eighth Appellate District, in the case of *Petitt* v. *Morton,* 28 Ohio App., 227, 162 N. E., 627, considered the matters complained of in this petition, in a chancery action, wherein the plaintiff sought a vacation of the order of probate, or that a trust *ex maleficio* be impressed on the Savoy Hotel in his favor.

That court held that the plaintiff could not recover the land itself, and that chancery could afford him no relief. This action the Supreme Court refused to review.

It therefore is apparent that the plaintiff cannot procure relief in either the court of probate or in equity, and that, if he has a remedy at all, it is in a court of law. We take the broad view that upon the principle of justice there is no wrong without a remedy, unless it be inhibited by statute or well-defined public policy. Section 16, Article I, of the Bill of Rights of the Constitution of Ohio, expressly provides that "all courts shall be open and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." And, as the Constitution guarantees this right to the plaintiff, we are brought to the inquiry: Has the plaintiff been deprived of a legal right to sue under the unprobated will?

It is the theory of this action that the fraudulent acts of the defendants have rendered recovery of the property itself utterly impossible, and that as a direct and proximate result plaintiff is damaged in a sum equivalent to the value of the property which was bequeathed to him by the first will, but which, because of the defendants' acts, he cannot recover in kind.

The defendants first contend that the petition is demurrable because the plaintiff's claimed right is predicated upon an unprobated will, and that no will has any legal effect as the basis for a suit in any court, or as the basis for any claim to property, or

to an interest therein on the part of the devisee named in such instrument, until it is probated. We cannot accede to the proposition that an unprobated will is a mere nullity, for we believe it to be settled in this state that a beneficiary named in an unprobated will has some legal rights thereunder, among which is the right to sue. He can contest a later will which is probated, and which destroys the gift to him in the former will. See *Kennedy, Exr.,* v. *Walcutt,* 118 Ohio St., 442, 161 N. E., 336. We, of course, recognize that it is true that unprobated wills are not usable as muniments of title. It is not offered in this case as such, but for the purpose of disclosing the source of plaintiff's interest in the subject-matter; in the same sense as it is offered in a will contest. In the case of *Winder* v. *Scholey,* 83 Ohio St., 204, 93 N. E., 1098, 33 L. R. A. (N. S.), 995, 21 Ann. Cas., 1379, the court in an action in equity decreed property to one not named as a legatee in the will as probated, and there the court recognized his unquestioned right to sue. And it seems to us to be logical that, had there been two wills made in that case, the first in favor of the true legatee, and the second, fraudulently made, in favor of another to the exclusion of the first legatee, and the second will had then been fraudulently probated, the rule would have been the same; and that is the alleged situation of the plaintiff in this case, and we believe it to be the law that an unprobated will affords a sufficient interest to be the basis of a suit at law.

It is next contended by the defendants that the probate court has exclusive jurisdiction to admit

wills to probate, that a jury in a tort action cannot do so directly or indirectly, and that this action is an attack upon and an attempt to modify the existing probate order, which is final and conclusive unless successfully contested. It is noted in *Winder* v. *Scholey, supra,* that the legal effect of a probated will can be altered in the interest of justice; and it was likewise held in *Seeds* v. *Seeds, supra,* that title which passed under a will was not conclusive. It is admitted by the demurrer that the defendants have inflicted a grievous wrong upon the right of the plaintiff, and we are unable to see any reason, justice, or authority why the plaintiff should be denied damages for the injury wrongfully done him by the defendant wrongdoers. Such an action cannot disturb the devise itself any more than if the action had been alleged against a third party, let us say a disinterested scrivener who suppressed the true will and fabricated the second. The estate in this case is fully settled; the action cannot unsettle it. Nor is any specified devise or legacy the object of this suit. The executor is not sued; nor are the legatees or devisees, as such. A judgment rendered could not disturb the order of probate or modify it in the slightest degree. It is this fact that distinguishes the case at bar from the earlier case in equity between the same parties already referred to. But one thing would in fact be accomplished; that is, the defendants as individuals would be required to respond in damages as tort-feasors out of their property generally, and the measure of the plaintiff's damage would be the fair market value of the devise as of the date he should have received his devise, and

of which he has been deprived by the fraud and wrongful acts of the defendants.

It is said in 30 Harvard Law Review, 527: "It is a tort principle that an intentional injury without justification creates liability. So it would seem sufficient, to support the plaintiff's action, to proceed on general lines, asserting the loss of a legacy by the defendant's intentional, wrongful act. But the same result may be reached on the theory of the violation of a specific right, *i. e.,* to evidence." This comment is made in a consideration of a case parallel to the one at bar. It is the case of *Dulin* v. *Bailey,* 172 N. C., 608, 90 S. E., 689, L. R. A., 1917B, 556, and the reason thereof this court would adopt. To this case as reported in L. R. A. there is appended a valuable note collecting the authorities supporting the view adopted by this court, and we note therein that the case of *Taylor* v. *Bennett,* 1 C. D., 57, 1 C. C., 95, is set forth as supporting the North Carolina case. In the case at bar it was previously said by this court that one who spoliates a will is liable in damages to the legatees for their increased cost and expense in probating the will; and it is logical to presume that the state of facts in the *Taylor case, supra,* and the principle therein adopted, carried to the extent and point of meeting the facts in this case, would require the application of the rule of law that is applied in the instant action. The cases of *Lewis* v. *Corbin,* 195 Mass., 520, 81 N. E., 248, 122 Am. St. Rep., 261, and *Murphy* v. *Mitchell* (D. C.), 245 F., 219, have been helpful, and recognize the principle here followed. Rood on Wills (2d Ed.), Section 798f, and 1 Page on Wills (2d Ed.), Section 503, unhesitatingly an-

nounce the same rule. The very recent case of *Creek* v. *Laski*, 248 Mich., 425, 227 N. W., 817, 65 A. L. R., 1113, lends further support to the views herein announced.

We would have it understood that we recognize that it may be most difficult for the plaintiff to prove the allegations of the petition by competent evidence, and to the satisfaction of a jury, but with that this court can have no concern. We have in mind that the plaintiff was not a party to the probate proceedings, and that he is entitled to his day in court.

The defendants as a second ground for sustaining the demurrer assert that the action is barred by the statute of limitations, but we having found that this proceeding is not an attack upon the order of probate, but is against the defendants individually, Sections 11631, 11640 and 11643, General Code, do not apply, but Section 11224 is applicable, and the action having been commenced within four years after the discovery of the wrongs complained of it is not barred by the statute.

It is therefore the judgment of this court that the trial court erred in sustaining the demurrer, and the judgment is reversed, and the cause remanded for further proceedings as provided by law.

*Judgment reversed and cause remanded.*

MIDDLETON and MAUCK, JJ., concur.

Judges MIDDLETON and MAUCK, of the Fourth Appellate District, and Judge SHERICK of the Fifth Appellate District, sitting by designation in the Eighth Appellate District.