GLEASON, Appellant,

v.

OHIO ARMY NATIONAL GUARD, Appellee.

[Cite as *Gleason v. Ohio Army Natl. Guard* (2001), 142 Ohio App.3d 697.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1038.

Decided May 1, 2001.

698

*Swope & Swope* and *Richard F. Swope,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Larry Y. Chan,* Assistant Attorney General, for appellee.

---

BROWN, Judge.

John E.T. Gleason III, plaintiff-appellant, appeals the August 14, 2000 judgment of the Ohio Court of Claims granting the motion to dismiss filed by the Ohio Army National Guard ("OANG"), defendant-appellee.

Appellant began active duty with OANG as a recruiter on June 1, 1984. Appellant claims that his tour of duty was scheduled to end on May 30, 1995. On August 4, 1995, OANG advised appellant, through a letter from Congresswoman Marcy Kaptur, that his term of service had been extended until August 28, 1995. Appellant states in his complaint that OANG asserts that on July 31, 1995, OANG removed him involuntarily from the service. However, appellant alleges that at no time was there an order entered in his records that ratified or granted the extension until August 28, 1995, and no notice was given as to the extension. Thus, appellant claims he was illegally and wrongfully removed because his tour had not been legally extended and there was inadequate time before the end of his tour to remove him from the service as provided by existing regulations. Appellant asserts that he should have been allowed to end his tour on May 30, 1995, by nonrenewal of tour. Appellant alleges he did not become aware of OANG's actions until May 1998, when he attempted to apply for a recruiter assignment in the Active Guard/Reserve Program but was refused. Appellant claims that at that time he was advised he could not reenlist because he had resigned from the OANG to avoid "adverse personnel action," which he denies. As a result of OANG's actions, appellant claims that he cannot obtain severance pay or reenlist to obtain four additional years of active service to gain retirement benefits.

On May 10, 1999, appellant filed a complaint in the Court of Claims against OANG, alleging fraud and infliction of emotional distress. Appellant prayed for an order permitting his reenlistment to active duty status with OANG, an award of $30,000 plus interest from August 1, 1995, for lost severance pay, and $1 million for lost personal benefits, financial loss, and emotional distress. On June 7, 1999, OANG filed a motion to dismiss pursuant to Civ.R. 12(B)(1) and 12(B)(6) and R.C. 2743.02(G). OANG argued that it was entitled to a dismissal for the following three reasons: (1) the Court of Claims lacked subject matter jurisdiction over appellant's claims because of federal preemption pursuant to R.C. 2743.02(G), (2) the two-year statute of limitations contained in R.C. 2743.16 had

expired, and (3) appellant failed to exhaust his administrative remedies. On August 14, 2000, the Court of Claims granted OANG's motion to dismiss. Appellant now appeals the judgment of the Court of Claims, asserting the following assignment of error:

"The trial court erred and abused its discretion in sustaining defendant-appellee's motion to dismiss."

Appellant argues in his sole assignment of error that the trial court erred in granting OANG's motion to dismiss. The Court of Claims did not state which of the three grounds it relied upon in granting the motion to dismiss. Because each is independently sufficient to support a dismissal of appellant's complaint, we need only find one ground meritorious to sustain the trial court's judgment. Thus, even assuming *arguendo* that the federal preemption statute does not apply and that appellant was not required to exhaust his administrative remedies, we hold that appellant failed to meet the applicable statute of limitations.

When reviewing a judgment granting a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim, an appellate court must independently review the complaint to determine if dismissal is appropriate. *McGlone v. Grimshaw* (1993), 86 Ohio App.3d 279, 285, 620 N.E.2d 935, 938–939. The appellate court need not defer to the trial court's decision in Civ.R. 12(B)(6) cases. *Id.* Dismissal of a claim for failure to state a claim upon which relief may be granted is appropriate only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, 1064–1065. In construing a complaint on a motion to dismiss pursuant to Civ.R. 12(B)(6), a court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755–756. A Civ.R. 12(B)(6) motion to dismiss based upon a statute of limitations should be granted only where the complaint conclusively shows on its face that the action is barred. *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 379, 23 O.O.3d 346, 348, 433 N.E.2d 147, 150–151. To conclusively show that the action is time-barred, the complaint must demonstrate both (1) the relevant statute of limitations, and (2) the absence of factors that would toll the statute or make it inapplicable. *Tarry v. Fechko Excavating, Inc.* (Nov. 3, 1999), Lorain App. No. 98CA007180, unreported, 1999 WL 1037755.

Pursuant to R.C. 2743.16, the period of limitations of actions against the state filed in the Court of Claims is two years from the date of the accrual of the cause of action. Appellant's complaint states that he was removed from service on July 31, 1995. He filed his complaint on May 10, 1999, approximately three years and ten months after his removal from service. Thus, appellant's complaint was filed

approximately one year and ten months beyond the period of limitations imposed by R.C. 2743.16.

■ Nevertheless, appellant contends that he timely filed his complaint because his cause of action did not accrue until May 1998, when he "found the affect [*sic*] of [OANG's] wrongful actions when he attempted to apply for an AGR tour in May of 1998," which OANG refused to allow because of his previous involuntary separation. The Ohio Supreme Court has stated that, "[a]bsent legislative definition, it is left to the judiciary to determine when a cause 'arose.'" *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 87, 4 OBR 335, 337, 447 N.E.2d 727, 730, citing *Harig v. Johns–Manville Products Corp.* (1978), 284 Md. 70, 75, 394 A.2d 299, 302. Generally, a cause of action exists and the statute of limitations begins to run from the time the wrongful act is committed. *Id.* Further, the discovery rule is invoked only in situations where the injury complained of may not manifest itself immediately and, therefore, fairness necessitates allowing the assertion of a claim when discovery of the injury occurs beyond the period of limitations. *NCR Corp. v. U.S. Mineral Products Co.* (1995), 72 Ohio St.3d 269, 271, 649 N.E.2d 175, 176–177.

■ Although appellant alleges that he did not understand the ramifications or effects of his separation until he was denied reenlistment in May 1998, the denial of his reenlistment was not the injury complained of. Rather, the actual injury complained of was the allegedly wrongful involuntary separation from service on July 31, 1995, as is apparent from the following excerpts from appellant's complaint:

"[Appellant] says that he was illegally removed because he was not legally extended and there was inadequate time before his end of tour to remove him from the service as provided by existing regulations. * * *

"[Appellant] says [appellee's] actions have illegally and wrongfully barred him from reenlisting * * *.

"[Appellant] said he was misled as to his status and his right not to be extended and then removed from service.

"* * *

"[Appellant] says [appellee has] concealed, denied and deceived [appellant] as to the legality, propriety and right to remove [appellant] after his tour ended."

Therefore, it is clear on the face of the complaint that the wrongful act alleged in appellant's complaint was the allegedly illegal involuntary separation on July 31, 1995.

■ Because the involuntary separation was the actual injury at issue, we must next determine whether the injury manifested itself immediately, *i.e.,*

whether appellant had knowledge that the separation was allegedly illegal and wrongful at the time of the separation as to fairly begin the running of the statute of limitations. We find that appellant knew his removal may have been improper at the time of his separation on July 31, 1995. First, appellant certainly knew the underlying circumstances of his own release. Appellant had to have intimate knowledge of his involuntary removal, as he was obviously personally involved in all the proceedings and actions that he claims were improper. Second, appellant's certificate of release or discharge from active duty, which appellant attached to his complaint as an exhibit, indicates in two separate places that appellant was involuntarily released; thus, appellant cannot claim that he was unaware of his release status. See *State ex rel. Crabtree v. Franklin Cty. Bd. of Health* (1997), 77 Ohio St.3d 247, 249, 673 N.E.2d 1281, 1283, fn. 1 (material incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12[B][6] motion to dismiss). Third, the face of appellant's complaint makes it clear he was aware of OANG's allegedly wrongful actions prior to May 1998. Paragraph nine of his complaint indicates that appellant "made a diligent effort to obtain documents, information and records to determine the propriety of [appellee's] actions and only found the affect [*sic*] of [appellee's] wrongful actions * * * in May of 1998." Thus, because appellant knew his separation was involuntary on July 31, 1995, and made efforts to determine the propriety of OANG's actions thereafter, it is apparent that appellant's injury manifested itself immediately. Therefore, the cause of action accrued at the time of his involuntary separation and not at the time he claims to have discovered the effects of the separation nearly four years later.

However, even if this court were to find that the effects of the separation were the actual injury suffered, the statute of limitations commences to run when, through the exercise of reasonable diligence, the injury should have been discovered. See *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 179, 546 N.E.2d 206, 209. Appellant could have discovered the effects of the separation immediately after the action was taken. With reasonable diligence, appellant could have investigated the repercussions of his involuntary termination on his ability to reenlist in the future. The complaint provides no explanation as to why appellant could not have discovered these effects at the time of his involuntary discharge by simply asking OANG how his involuntary separation would affect his future military career. Appellant either failed to consider that there could be any deleterious effects at the time of his release, did not care what the effects were at that time, or failed to investigate any such effects thoroughly.

In addition, appellant's claim that he did not discover the effects of his termination until May 1998, when he attempted to reenlist, is contradicted in part by his complaint itself and the basic nature of his cause of action. As OANG

points out, appellant's complaint prays for $30,000 in severance pay. Clearly, appellant had knowledge that he did not receive any severance pay at or shortly after the time of his separation from service. The Ohio Supreme Court has held that "[o]rdinarily, a cause of action does not accrue until actual damage occurs; when one's conduct becomes presently injurious, the statute of limitations begins to run." See *Children's Hosp. v. Dept. of Pub. Welfare* (1982), 69 Ohio St.2d 523, 526, 23 O.O.3d 452, 454, 433 N.E.2d 187. 190. In the present case, when appellant did not receive severance pay after his involuntary separation, the actual injury would have occurred, and the cause of action for lost severance pay would have immediately accrued. This same "actual damage" rule would equally apply to the remainder of appellant's action, as appellant sustained the actual damage at the time his official involuntary separation took effect. To find that appellant's actual damage did not arise until he was denied reenlistment would encourage absurd results. On that finding, appellant and other similarly situated parties could deliberately forestall the accrual date of their cause of action indefinitely, and decades could theoretically pass before commencement of the statute of limitations. To subject the accrual date of a cause of action to such caprice by the aggrieved party would be incongruous with the purposes underlying statutes of limitations.

Appellant cites several cases wherein the discovery rule has been used, including asbestos litigation, medical malpractice, legal malpractice, DES product liability claims, and negligent credentialing of a physician by a hospital. Appellant fails to cite any case law wherein a court has applied the discovery rule in this area of law or any factually similar instance. However, we find our decision in *Wiley v. Adjutant General's Dept.* (Sept. 1, 1994), Franklin App. No. 94API02–176, unreported, 1994 WL 479357, instructive and persuasive. In *Wiley*, the plaintiff was discharged from OANG on June 29, 1988. On May 24, 1991, OANG officially changed the date of plaintiff's discharge to January 6, 1989. The plaintiff filed a complaint on May 4, 1992, claiming that he had been improperly discharged from OANG. The Court of Claims found that the plaintiff's claim for wrongful discharge arose on June 29, 1988, as indicated on the special order 250–AIR of the Adjutant General's Department of the State of Ohio; thus, his action was barred by the two-year statute of limitations. Plaintiff appealed, claiming that his cause of action accrued on May 24, 1991. We rejected plaintiff's contention and found that the plaintiff's claim for wrongful discharge accrued at the latest on January 6, 1989, the corrected date of his discharge. Likewise, in the present case, appellant's cause of action for wrongful discharge accrued on the date of his involuntary release on July 31, 1995, as specifically indicated on the certificate of release or discharge from active duty. Therefore, after examining the face of the complaint and construing all of its allegations in favor of appellant, we find that his cause of action is barred by the two-year statute of

limitations of R.C. 2743.16, and the Court of Claims did not err in granting OANG's motion to dismiss.

Accordingly, appellant's assignment of error is overruled, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

KENNEDY and BOWMAN, JJ., concur.